Good morning. May it please the Court, Katherine Davis on behalf of Appellant Larry Ingram. The panel has asked the parties preliminarily to discuss the question of whether the City is precluded from re-litigating the Court of Appeals finding of a Fourth Amendment violation in this civil action. I'd like to start with that issue, if it pleases the Court. Would you mind just speaking a bit louder? Of course, Your Honor. Steps into the microphone. Absolutely. Is this better? That's a little better. A little bit better. How's this? That's better. That's better. Okay. Okay. Mr. Ingram respectfully submits that the answer to the panel's question in this case should be yes for the following reasons. The District Court found that the Court of Appeals finding of a Fourth Amendment violation was not binding on the City or the officers because they were not parties to the criminal proceedings. The Court relied exclusively on this Court's decision in Davis v. I, the 1971 case. There, this Court held that police officers were not precluded in a subsequent civil action from re-litigating a Fourth Amendment violation because the officers were not directly employed by the State, they had no control over the proceedings, and they didn't have a direct personal interest in the outcome. However, in so holding, this Court employed a very narrow definition of privity, one that was derived from the restatement and not California law. And Mr. Ingram respectfully submits that Davis is distinguishable for at least three reasons and shouldn't govern a privity analysis in this case. One, as the Court is aware, Davis predates Supreme Court case law and the law of this circuit, finding that State law and not Federal law governs the question of whether State court judgments will be held to have a preclusive effect in subsequent Federal civil rights claims. Second, the Davis case did not involve municipalities, only police officers, and there's a big distinction in the law in our view. Therefore, the Court in Davis didn't address the preclusive effect of a State court judgment on a municipality. And finally, the California definition of privity, as I mentioned, is quite substantially broader than that employed in the Davis case. Let me ask you a practical question because it appears to me from looking at the case law that there isn't a case that permits preclusive effect with respect to the individual defendants. And if that is correct, and if you're also correct, we'd have a situation in which the city is bound but the individual officers are not. How would that work out in the real world? That's a very good question, and I've been giving it a lot of thought since Friday afternoon. I'm not quite sure I have an answer. I think certainly it would require some serious thought and reconciliation. I would offer the following observations, however. Clearly, Sims and Miller don't apply squarely to the individual officer context, so that's a given. But I would say that this case is different to the extent the Court of Appeal really only considered and found that there was a Fourth Amendment violation as a matter of law, essentially. It applied the Supreme Court precedent both from the United States and California cases and found that the exclusive reliance on erroneous information supplied by law enforcement violates the Fourth Amendment, notwithstanding a good faith subjective or objective belief, notwithstanding qualified immunity. In other words, the Court only decided the fact of the violation. It didn't consider the reasonableness of that violation. So although none of the cases that I have found deal with individual liability, I'm sorry, privity with respect to officers, those cases that don't find privity focus on the due process concern and it certainly arises when you have an individual trying to defend a Section 1983 lawsuit. How far does it get you to say they violated the Fourth Amendment, but then the question is are they liable? That's a separate question. Certainly, Your Honor, and I would submit that it gets us quite a bit down the road, and the reason is the whole purpose behind issue preclusion is to avoid inconsistent judgments, number one. We have a situation here where a criminal conviction was reversed on grounds that the district court subsequently found didn't exist, and then you have a criminal defendant who is summarily precluded from at least putting the qualified immunity defense on trial on basis that the court of appeal found to exist. So we still think that battles should be done on reasonableness and qualified immunity and municipal liability, and it might very well be the case that we don't prevail. But to assail the court of appeal's finding of law that there was a Fourth Amendment violation is an entirely different matter. Well, let's assume that that's been found. Okay. And then say why they should be liable. Well, the district court in this case didn't reach the qualified immunity analysis. The court just essentially found that there was no Fourth Amendment violation in the first instance. It applied a completely different line of cases than had been applied by the court of appeal. So what is the relief that you're seeking? It's quite limited, it sounds like. Just a reversal on the sole question, whether there was a Fourth Amendment violation and a remand for everything else in the case. I'm not – the privity issue was just really raised. No, I understand that. What is the relief you're seeking? Leave aside what questions we asked you. What is specifically the relief you're seeking from us? A remand for consideration of the factual issues. The way I read the district court's order, only the constitutionality was addressed. I don't read the opinion as reaching the qualified immunity analysis necessarily. So whether we reach it through, in your view, whether we reach your result through preclusion principles or de novo application of Fourth Amendment law, you don't really care as long as we say there's a Fourth Amendment violation. But that's the only issue you want us to decide. Everything else is remanded, as I understand it, under your theory. I think that that's correct. I'm hesitant to say summarily that that's the position. It could be that the – I would have to go back and examine the order more closely, to be frank. But I do think that that's correct, that we're looking for a reversal of the court's determination that there was no Fourth Amendment violation and then a trial on the qualified immunity issues. I'm not sure that the panel could enter that. It comes down to reasonable suspicion, does it not? Yes. Reasonable suspicion to stop the car. Yes. And you've got Miguel and you've got Dorius, those two cases. Why was the trial court wrong? Well, in my view, Your Honor, it's the wrong line of cases. And the reason is that the Hensley-Whiteley line of cases from the U.S. Supreme Court and then the Willis-Ramirez line that the California Court of Appeal relied on apply in this instance. And the rule from those cases is simply that when law enforcement relies exclusively on erroneous information provided through other law enforcement channels, there's a per se violation of the Fourth Amendment. Yeah, but we're dealing, first of all, with the officers here. We put aside the city. But for the officers, don't we have to look at the totality of circumstances which they saw? In other words, they're looking at this printout and it has this information on it which arguably gives them sufficient reason to stop the car. Does it not or not? Now, where do we go with that? The way I read the cases, the analysis goes like this. There is a Fourth Amendment violation because it's almost a per se rule. So the question, as the Court has pointed out, becomes, was reliance on the database reasonable under the circumstances? Our position is that the McGill and Dorius line of cases don't apply here because there was no mistake of fact. Well, put yourself in the position of the officer in the patrol car. Mm-hmm. What should the officer have done? What should the officer have done? This information is on his screen. Well, several things. By the officer's own admissions, both of them, they had never seen this sort of information before. They didn't know what a pawned vehicle meant. They weren't familiar with the legal implications. They weren't even sure there had been a violation of law. Typically, there are several, as I understand it. The only question is, is there sufficient grounds for a stop? And if this information surfaces, as it did, why wouldn't that be sufficient? Well, I think our position is that given that they did not know that the conduct they suspected even constituted a violation of law, it's a mistake of law and not a mistake of fact. Well, look at it this way. The system they tap into is called stolen vehicles. And so that's the category that they have encountered. It seems to me that's a mistake of fact. They think this vehicle was stolen. Well, the case is certainly a fair assessment, but in my view, the cases are pretty clear that if you pull someone over for something that doesn't constitute a violation of law, that's a mistake of law and not a mistake of fact. And the officers admitted that they didn't know what law had been violated. There was no indication that a crime had been committed, no reference to it. An unfamiliar entry in the system that was pawned, but the main they know the system reports stolen vehicles. So they believe, you would say, that a vehicle's been stolen. That is a real crime. Well, they admitted in their declarations and their deposition testimony that they didn't know whether a crime had been committed. It was unfamiliar to them. And the city's expert, Detective Feskerman, submitted a declaration that stated that all kinds of non-criminal actions are included in the stolen vehicle database, that there are lost and recovered cars and plates, other sorts of civil actions and facts that are included in that database. Our position is simply that under the circumstances, given the total unfamiliarity with the case, they should have just done a little bit more inquiry. If I may, Doré and Miguel make a point that there was no reason to question the accuracy and integrity of the information provided. There are two main reasons that this is different. They had no reason to question the integrity of the information provided. In this case, the officers admit, we didn't know what we were looking at. They could have called backup, field sergeant. They could have called dispatch. They could have queried the NCIC to confirm that, in fact, there was no, the vehicle hadn't been stolen. When they ran it through the countywide warrant search, it came back with no hit. So now they're looking at, well, gee, we have a victim indicated here, but the car hasn't been involved in a crime. Should we give someone a call? And they didn't do that. And if I may, just one more point. The other critical difference between Doré and Miguel, Your Honor, is that the information provided in those cases was not through official law enforcement channels. In Miguel, it was the Arizona DMV, and in Doré, it was a dollar rent-a-car. So they're very different cases, where here, the line of cases where exclusive reliance on law enforcement information is unconstitutional puts it in a fundamentally different light. And even if the stop, just in closing, even if the stop had been lawful, let's assume it was reasonable. Let's follow up. Let's see what's going on. They stopped these two men, ordered them out of the car, searched them, arrested them, and then ran the driver's license through the stolen vehicle system to see if it had, in fact, been. Thank you, counsel. Our questions have taken you way over time. Thank you. We'll hear now from the city. Good morning, Your Honors. Janet Boeke, again, on behalf of the City of Los Angeles and Officers Arnas and Caleros. On the issue of collateral estoppel, we did file a supplemental 28J letter on that topic. But what rings through all of the case law in California isn't crystal clear on privity. What seems to ring through the case law is, as to the individual officers, do they have a full and fair opportunity to litigate? And in this case, it's a resounding no. Well, the cases do seem to be quite different with respect to the municipality and the individuals. And I'll ask you the same question as I asked opposing counsel. If we were to conclude, after examining these cases, that there is issue preclusion for the city but not the individuals, how does that play out? If I could just preliminarily also indicate that this issue, of course, has been raised only right before oral argument and wasn't raised by appellants. So there really isn't much of a record to draw on. But I think the collateral estoppel issue as to the city also cuts totally in the city's favor. The city's liability here, of course, is only on the basis of Monell. So we're talking about whether there's a policy or practice that is unconstitutional as the driving force behind the violation. So if the city is litigating the civil issue, the issues that the city is litigating are so distinct from anything that's happening in the criminal prosecution. There's absolutely no identity of issues.  No, we don't have an unconstitutional policy or practice. No, we weren't required to train on something that's not a normal reoccurring situation. Its defense in the civil lawsuit would not be represented by the prosecutor's interest in the criminal case. There's nothing analogous there whatsoever. So if we're talking about this basic notion of full and fair opportunity to have presented your case, the city of Los Angeles had absolutely no opportunity in the criminal prosecution to defend itself on a Monell claim. So I don't even see how we could reach the possibility that the city is collaterally estopped by that finding. Let's go back to sort of the ordinary leave aside issue preclusion completely. Okay. I have difficulty seeing the reasonableness of what these officers did based on the information they had on this original printout, leaving aside the delayed information that said don't stop people based on this. As I parse the thing, it's kind of hard to read if you're not familiar with it, but it does seem to say for information only in big letters. It says pawned. There's nothing about stolen or any other criminal word attached. The registered owner and the quote-unquote victim are the same person. That is, he's the victim of pawning his own car, apparently. What about that could lead to a reasonable suspicion that a crime had been committed? First of all, you know, we have to kind of understand the background of how this thing was generated, and we did cite the statutes in our briefs. When people pawn goods, including cars, and I've asked so many people, have you ever heard of cars being pawned, and nobody I know has ever heard of that, but apparently you can pawn your car. So when people pawn a car or other goods, the pawn shop is obligated by statute to report to the police department, hey, we've received these pawned goods. And the whole statutory scheme is because trying to track down stolen goods that are being pawned. So they report to the police department, and the police department inputs into the database. The database is the Stolen Vehicle Database. That's the broad name for it, but it includes any situation, such as a pawned vehicle, which is not supposed to be driven. When the registered owner pawns the vehicle, he gives up all rights to be driving this vehicle. It's now in possession of the pawn shop. If there's a pawned vehicle on the road, and Officer Calero said this in his deposition, that raises reasonable suspicion. It's pawned. It's not supposed to be being driven by the registered owner. If somebody's stolen it out of the pawn shop in Poundlot, then that's a crime as well. So the pawned vehicle information, it was factually inaccurate in that apparently Mr. Ingram had retrieved his vehicle, and we don't know who's responsible for not having updated the information that he retrieved the vehicle, probably the pawn shop. But the fact that it's pawned does raise a reasonable suspicion. Even when it says this is for information only? Well, what does it for information only mean? I mean, there's no explanation for that. It still raises a suspicion. It certainly doesn't alleviate that suspicion. We're talking about reasonable suspicion to make an investigatory stop. That's all we're talking about. It's 1 in the morning. We're in a high-crime area. This vehicle comes back as a hit in the stolen vehicle system. It shows that it's pawned. It shows that there's a victim. The registered owner name and the victim name, there's some variation. There's a Laverne Bridgman listed as the registered owner. Mr. Ingram's middle name is Noble. That's transposed, I believe, as the registered owner. So even the names aren't the same. They're not completely in sync. So the only question is, objectively reasonable officer, does he have a basis for making the stop based on this information? I think that's definitive, absolutely. Once they make the stop, we have additional information. We now know that the driver is on parole for narcotics. He's not a licensed driver. Patdown is completely justified before we do any other investigation asking for people to pull out driver's licenses from their pockets, registration. We want to secure the scene here. That's the whole purpose of a patdown, so you can do your investigation in a safe manner. Boom. We find the drugs in the pipe. It's a whole different investigation. But, yeah, I think absolutely this information raised reasonable suspicion. So much was made in the trial court about the later entry on the MTT about do not arrest or stop. It is crystal clear if you look at this record. That came up ten minutes after the stop. That cannot be used to say that the officers didn't have reasonable suspicion. Is there any indication in the record of why that didn't come up initially when it should have? Yeah, the officers, there are some declarations in the record explaining, I think it came in connection with the reply, explaining how it is that this information was coming up. They were running different inquiries. After the initial inquiry in the stolen vehicle system, they eventually get the driver's license. Now they're running the driver's license number. There were different databases they tapped into after the original inquiry. So that's, I think, why that information came up later. Plaintiffs would have the city or the officer sitting there following this vehicle for I don't know how long while they're making all kinds of additional inquiries. That's just not realistic. Once they have the reasonable suspicion, they have the right to make that stop. They're not going to be driving around for a half hour trying to tail this vehicle and get additional information. That's a very dangerous thing for officers to be doing at 1 in the morning. But if they have no reasonable suspicion to begin with, then they have no reason to be tailing it for half an hour dangerously or otherwise. Well, I mean, their argument was had you done further inquiry, maybe you would have gotten this additional information. That's all looking into the future. The officers don't know that at the time. At the time they make the stop, and there's no evidence in the record to refute this, this was a very unusual entry in the stolen vehicle system. In fact, if that vehicle was pawned and is being driven on the road, that is a crime. There's nothing to refute that. And we had Detective Festerman's declaration. He's been at this. What is the crime of driving a pawned vehicle? If the vehicle is pawned, it's not in the lawful custody of the registered owner. It can't be driven at all? Is that your position? A pawned vehicle has to sit in a lot somewhere and can't be driven? Is that your position? Well, who's the lawful owner at that point? You're not answering my question. Is it true in California that a vehicle that has been pawned cannot be driven on the public roads? That would be my understanding. What statute says that in California? That it's a crime to drive property, to be in possession of property that is not yours. It is now in the possession of the pawn shop. Well, that's not actually an answer to the question. I'm not asking by whom. You're saying that the very fact that a pawned vehicle is being driven at all is a crime, and that's what I'm questioning. So, in other words, if I just see a car driving down the street and I happen to know that that vehicle has been pawned, does that automatically mean that somebody, whoever's driving it, is committing a crime? I think that's true. I think if the lawful, if the person who pawned it has not done what he has to do to retrieve it from the pawn shop. So it sits in the pawn shop the same way a watch does. It can't be driven by anyone? That's certainly my understanding. I can't imagine who could lawfully be in possession of it when it's pawned, and that was certainly also close. Counsel, I have a question. What does the record tell us in terms of why the officers put the license number into the system in the first place? I gather they noticed a Chevrolet Beretta at the corner of Main and 43rd. Did they have any reason to be suspicious, simply be, was it erratic behavior, parking in a non-parking zone? No, the record strictly says they were doing random license plate checks 1 a.m. in a high crime area. Is that routinely done? The record doesn't indicate one way or the other. You know, it's a tool that law enforcement does use. There's nothing unlawful with doing it. They're simply running a license plate. If it comes back, it's not stolen, there's no outstanding warrants on it, it's not a wanted vehicle involved in a crime, then nothing happens. There's no harm. Nobody's going to be stopped impermissibly if it comes back clean. Anything further? Just, we've gotten so hung up, I think, on the Fourth Amendment issue, we haven't focused much on prong two of qualified immunity, and the fact that this Court has two cases we've talked about during the initial argument that are absolutely on point. These are mistakes of fact. They're reasonable mistakes of fact. It seems to me a classic case to apply qualified immunity. If any errors were made in this whole situation, it strikes me that it was probably the fault of the pawn shop for not calling in, that the registered owner has come back to retrieve the vehicle. We don't know that. Maybe the fault of the San Diego Police Department. They got the information but didn't update it. Maybe the fault of DMV. They got the information but they didn't update it. But the inquiry in a civil rights lawsuit where individual officer's liability is at heart is, are these two men responsible? Should they be held liable? If they made reasonable mistakes, if they were reasonable in relying on this information, no. They are absolutely entitled to qualified immunity. I did cite to the Court in another 20HA letter the Rodas case. That's the counterfeit money case. I think it's a very similar situation. The counterfeit bill looked unusual. This Court found the officers were absolutely entitled to qualified immunity for assuming that was somebody passing a counterfeit bill, just the same way this record looked unusual to them. Thank you, counsel. Thank you. The case just argued will be submitted for decision, and we will hear argument next in United States v. Garcia Villegas.
judges: Noonan, O'scannlain, Graber